**Thanh Huu NGUYEN, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 92–9543.

United States Court of Appeals, Tenth Circuit.

April 9, 1993.

Rehearing Denied June 4, 1993.

Thanh Huu Nguyen, pro se.

Stuart M. Gerson, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, and Karen Fletcher Torstenson, Atty., Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, for respondent.

Before ANDERSON and EBEL, Circuit Judges, and BRIMMER,* District Judge.

EBEL, Circuit Judge.

Petitioner alien Thanh Huu Nguyen petitions this court for review of an order of the Board of Immigration Appeals (Board), affirming the determination of the Immigration Judge (IJ) that petitioner is deportable pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4).[1] The IJ found petitioner deportable as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, *see id.,* and denied his applications for asylum and withholding of deportation under 8 U.S.C. §§ 1158, 1253.[2]

## BACKGROUND

Petitioner is a thirty-year-old male Vietnamese national, admitted to the United States in 1981 as a refugee. On August 1, 1988, petitioner and a companion left Houston, Texas, driving a stolen vehicle. Petitioner claims that he did not know the vehicle was stolen until his companion informed him of that fact when they were five hours out of Houston.

Approximately seven hours out of Houston, the car was stopped for speeding by an Oklahoma Highway Patrol officer. Because the driver, petitioner's companion, did not have a valid driver's license, and because the car was registered in another name, the officer placed the driver in the patrol car while he ran a check on the vehicle. While the officer was waiting for information, petitioner got out of the stolen vehicle, approached the patrol car, and began shooting at the officer with a gun. He fired five shots into the patrol car, and then both petitioner and his companion attempted to flee the area. Petitioner was subsequently apprehended and charged with shooting with intent to kill and possession of a stolen vehicle.

---

* Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

1. This section was renumbered by the Immigration Act of 1990 to 8 U.S.C. § 1251(a)(2)(A)(ii). Immigration Act, Pub.L. No. 101–649, § 602, 104 Stat. 4978 (1990). The new section is applicable to orders to show cause issued after March 1, 1991. Petitioner's order to show cause was issued April 26, 1990. Therefore, prior law applies.

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this petition for review. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Petitioner entered a plea of nolo contendere to both charges and was sentenced to twenty-three years' imprisonment on the shooting charge and two years' imprisonment on the possession charge, the sentences to run consecutively. Following petitioner's conviction, he was served with an order to show cause, charging him with being deportable under § 1251(a)(4). The IJ found him deportable and subsequently denied his applications for asylum and withholding of deportation under §§ 1158, 1253. The Board affirmed.

> Title 8 U.S.C. § 1251(a)(4) states in part: Any alien in the United States ... shall, upon the order of the Attorney General, be deported who ... (4) ... at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.

Petitioner does not refute that he was convicted of committing two crimes. However, in his petition for review, petitioner claims that the IJ erred in (1) concluding that petitioner's two crimes of shooting with an intent to kill and possession of a stolen vehicle do not arise out of a "single scheme of criminal misconduct" within the meaning of § 1251(a)(4); (2) denying petitioner's applications for asylum and withholding of deportation; and (3) retroactively applying a recent mandatory deportation regulation, 8 C.F.R. § 208.14(c)(1), to his case.[3] We will address each of these allegations in turn.

## DISCUSSION

1. *Interpretation of what constitutes a "single scheme of criminal misconduct" under § 1251(a)(4).*

 In its decision in this case, the Board, relying on its recent decision in *In*

*re Adetiba,* Interim Dec. 3177, 1992 WL 195812 (Bd.Immigration App.1992), held that the crime of shooting with an intent to kill and the crime of possession of a stolen vehicle were not part of a single scheme but instead constituted two separate crimes for the purpose of 8 U.S.C. § 1251(a)(4). We review the Board's legal determinations de novo. *Kapcia v. INS,* 944 F.2d 702, 705 (10th Cir.1991).

The legislative history of the 1952 Immigration and Nationality Act offers no illumination as to congressional intent regarding what constitutes a single scheme of criminal misconduct for purposes of the exception to deportation.[4] This circuit has not previously addressed the issue, and the circuits that have interpreted the language are split.

 The phrase "single scheme of criminal misconduct" was interpreted by the Board in *In re Adetiba* as follows:

> [T]he statutory exception refers to acts, which although separate crimes in and of themselves, were performed in furtherance of a single criminal episode, such as where one crime constitutes a lesser offense of another or where two crimes flow from and are the natural consequence of a single act of criminal misconduct.

Interim Dec. 3177 at 12. We hold that this is a permissible interpretation of the statute and, accordingly, we adopt that interpretation within the Tenth Circuit after giving due deference to the Board pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). *See Iredia v. INS,* 981 F.2d 847, 849 (5th Cir.1993) (finding the

---

**3.** In his opening brief, petitioner alludes to an allegation that his counsel failed to provide him with effective assistance because he did not submit documentary proof of alleged persecutions by the Vietnamese government. However, as noted by respondent, petitioner did not raise this issue on appeal to the Board. Consequently, we do not address the issue. *See Rivera–Zurita v. INS,* 946 F.2d 118, 120 n. 2 (10th Cir.1991) (failing to raise question on appeal to

Board constitutes failure to exhaust administrative remedies and deprives reviewing court of jurisdiction to address that issue).

**4.** *See* S.Rep. No. 1137, H.R.Rep. No. 1365, H.R.Conf.Rep. No. 2096, 82d Cong., 2d Sess. 2 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653–1756.

Board's interpretation of § 1251(a)(4) not to be unreasonable under *Chevron*).

The Board has elaborated upon its interpretation of § 1251(a)(4) in a number of cases where concrete factual scenarios help give meaning to its analysis that essentially equates "single scheme of criminal misconduct" with a "single criminal episode."

In *In re Z*, 6 I. & N. Dec. 167, 168–69 (1954), the Board upheld a deportation decision for an alien who was convicted of two counts of forgery of government checks to the same payee, in the same place, on two different dates. The Board held that the two forgeries were not part of a single scheme exception, and that the mere repetition of an earlier crime did not require both crimes to be considered as part of a single scheme. However, as examples of what would constitute a single scheme, the Board in *In re Z* discussed the counterfeiter who both possesses and passes a counterfeit bill, and the person who breaks and enters a store with intent to commit larceny and then assaults a night watchman while in the store. *Id.* at 169. The Board contrasted these examples with one in which the criminal breaks and enters and commits larceny and assault in one store and then goes next door to an adjoining store and repeats the crime. *Id.* The breaking and entering in two separate stores would not qualify for the single scheme exception. Under the Board's interpretation, in order to qualify for the single scheme exception, the crimes must "flow from and [be] the natural consequence of a single act of criminal misconduct. That is, … [they must be] two separate and distinct crimes in a transaction which morally constitutes only a single wrong." *Id.*

Using the same reasoning, the Board in *In re J*, 6 I. & N. Dec. 382 (1954), upheld a deportation decision for a Canadian citizen convicted of two counts of attempted income tax evasion one year apart. The Board concluded these were separate crimes because the crimes were not "continuing offenses" and the alien was "free to cease his purposeful acts" at any time.

*Id.* at 385–86. Again resorting to analogy, the Board stated that

> [r]obbery involving separate persons at different times, false pretenses involving distinct offenses, forgery and uttering of different checks at different times, after conviction, have been held as not arising out of a single scheme of criminal misconduct.
>
> On the other hand, we feel that a single scheme of criminal misconduct is present, if in the preformance [sic] of one unified act of criminal misconduct several criminal offenses (for example, breaking and entering followed by larceny or an attempt to escape after an assault) are committed.

*Id.* at 386 (citation omitted).

In *In re Adetiba*, the Board upheld the deportation of an alien convicted of fifteen counts relating to fraudulently obtaining and using false credit cards. The Board held that the fifteen counts were not pursuant to a single scheme even though they all shared a similar modus operandi. Interim Dec. 3177 at 12–13. The Board opined that to hold otherwise would insulate from deportability those aliens who formulate a plan of future criminal misconduct involving many separate crimes, while deporting those who commit two such crimes without a plan. *Id.* at 12. Such a result was characterized by the Board as absurd. *Id.* at 11.

Several circuits have generally agreed with the Board's interpretation that the "single scheme of criminal misconduct" language means, essentially, a single criminal episode. *See Iredia*, 981 F.2d at 849 (holding that thirteen fraudulent uses of credit cards were not pursuant to a single scheme); *Pacheco v. INS*, 546 F.2d 448, 452 (1st Cir.1976) (holding that two breaking and entering incidents that were separated by two days of time were not pursuant to a single scheme even though both may have occurred during a continuous drinking binge. The court equated "single scheme" with a "temporally integrated episode of continuous activity."), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1683, 52 L.Ed.2d 380 (1977).

By contrast, the Ninth Circuit, in at least some of its cases, takes a more inclusive view of "single scheme," and requires only a common plan or intent pursuant to which multiple crimes are committed. *Gonzalez–Sandoval v. INS,* 910 F.2d 614, 616 (9th Cir.1990) (holding a single scheme existed when an alien planned to rob the same bank three times and in fact succeeded in robbing it twice in two days. The court concluded that "the two predicate crimes were planned at the same time and executed in accordance with that plan," and thus constituted a single scheme; *Leon–Hernandez v. INS,* 926 F.2d 902, 905 (9th Cir. 1991) (holding that two acts of oral copulation with a person under the age of sixteen committed one month apart were not part of a common scheme "[i]n the absence of evidence of a more conscious, coherent 'plan or program of future action' "). The Third Circuit seems to follow the Ninth Circuit's approach. *See Sawkow v. INS,* 314 F.2d 34, 38 (3d Cir.1963) (holding that INS failed to prove that crimes of receiving stolen vehicle and stealing a different vehicle one day later were not part of a single scheme).

■ Applying the "single criminal episode" test articulated by the Board and the Fifth and First Circuits, it becomes apparent that petitioner's criminal acts of shooting with an intent to kill and possession of a stolen vehicle were not part of a single scheme. Petitioner did not need to shoot at the officer in order successfully to complete the act of stealing the car. The car had, many hours earlier, been successfully removed from its true owner. The theft was complete and petitioner was, at the time of the shooting, merely in the process of enjoying his ill-gotten gains. To hold that the shooting was necessary to allow petitioner successfully to continue to possess and improperly use the fruits of a criminal enterprise would be, in our view, an impermissibly broad construction of the phrase "single scheme" as used by 8 U.S.C. § 1251(a)(4). Thus, we uphold the Board's finding that the two crimes here were not pursuant to a single scheme.

*2. Asylum and Withholding of Deportation.*

■ The Act establishes a two-part test for determining whether a deportable alien is statutorily eligible for asylum. *Kapcia,* 944 F.2d at 706. Step one requires the alien to show that he or she is a refugee by proving either past " 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.' " *Id.* (quoting 8 U.S.C. § 1101(a)(42)). Step two allows that once the alien has established statutory eligibility as a refugee, the Attorney General may apply his discretion in granting asylum. *Kapcia,* 944 F.2d at 708. We apply the substantial evidence standard to a review of the Board's factual determination of whether an alien is a refugee, and an abuse of discretion standard to the Attorney General's decision of whether to grant asylum. *Id.* at 707, 708.

■ Petitioner claims that because his father and his brothers were mistreated in Vietnamese reeducation camps and because he deserted from the military service five months after he was conscripted, he will face persecution if he is returned to Vietnam. Cert.Admin.R. at 71–72. Persecution is defined by the Seventh Circuit "as the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive.... [which entails] 'more than just restrictions or threats to life and liberty.' " *Zalega v. INS,* 916 F.2d 1257, 1260 (7th Cir.1990) (quoting *Desir v. Ilchert,* 840 F.2d 723, 726 (9th Cir.1988)). We do not need to define with great precision the meaning of prosecution because, although petitioner expressed concern regarding what treatment he would face upon his return to Vietnam, the administrative record contains sufficient and substantial evidence to support the Board's determination that petitioner has failed to establish that the Vietnamese government will subject him to persecution upon his return.

Because we agree that petitioner failed to meet his factual burden of establishing statutory eligibility for asylum, it is unnec-

essary to address the issue of whether the IJ's denial of asylum was an arbitrary and capricious exercise of his discretion. *See Michelson v. INS*, 897 F.2d 465, 468 (10th Cir.1990).

■ On the other hand, the Attorney General has no discretion in withholding of deportation decisions. If it is determined "that [an] alien's life or freedom would be threatened in [his] country on account of race, religion, nationality, membership in a particular social group, or political opinion," the Attorney General "shall not deport or return" the alien to that country. 8 U.S.C. § 1253(h)(1). Again, the burden is on the alien to establish a "clear probability of persecution." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (1987).

■ The Supreme Court has not equated this test with the well-founded fear test for establishing a right to asylum. *Id.* at 446, 107 S.Ct. at 1221. It goes without saying that the well-founded fear test is easier to establish. Therefore, because petitioner failed to meet the threshold burden of establishing statutory eligibility for the grant of asylum, it is clear that he did not meet the tougher standard required for withholding of deportation. *See Kapcia*, 944 F.2d at 709. Accordingly, the Board's denial of this relief to petitioner is supported by substantial evidence.

3. *Retroactive application of INS regulation, 8 C.F.R. § 208.14(c)(1) to petitioner's case.*

■ A recent INS regulation, 8 C.F.R. § 208.14(c)(1), applicable to applications for asylum filed on or after October 1, 1990, requires a mandatory denial of asylum applications in cases where the crime of the alien is particularly serious.[5] Petitioner's conviction for shooting with intent to kill would no doubt qualify as such an egregious offense. However, this regulation is only germane to asylum applications filed

after October 1, 1990. Consequently, it is not applicable to petitioner's application.

In discussing his reasons why he would exercise his discretion and deny asylum to petitioner even if he could meet the statutory eligibility requirements, the IJ considered petitioner's criminal record. The IJ noted that petitioner's crime of shooting with intent to kill was a " 'particularly serious crime.' " Cert.Admin.R. at 77, 78. Petitioner argues that this constitutes an impermissible application of § 208.14(c)(1) to his case.

It appears the IJ was referring to the language of 8 U.S.C. § 1253(h)(2)(B), which states that the rule mandating a withholding of deportation in cases where an alien's life or freedom would be threatened does not apply if an alien has been convicted of a "particularly serious crime." *See, e.g., Ramirez–Ramos v. INS*, 814 F.2d 1394, 1397–98 (9th Cir.1987) (holding that an alien convicted of a particularly serious crime is deportable regardless of his fear of persecution in the country of deportation). However, as far as petitioner's asylum application is concerned, the IJ's consideration of the seriousness of petitioner's crime in exercising his discretion is not precluded. The record is void of any indication that the more recent mandatory regulation, applicable to asylum requests, was applied in petitioner's case. Therefore, petitioner's argument is without merit.

For the foregoing reasons, the order of the Board of Immigration Appeals is AFFIRMED.

---

5. Section 208.14(c)(1) reads in pertinent part:

(c) *Mandatory denials.* An application for asylum shall be denied if:

(1) The alien, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community[.]