**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 2 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLAUDIO RIVERA-JIMENEZ;
FRANCISCA CARRERA
DE RIVERA; PEDRO
RIVERA-CARRERA; CLAUDIO
RIVERA-CARRERA; EFRAIN
RIVERA-CARRERA; ADELINA
RIVERA-CARRERA; JOSE
ANTONIO RIVERA-CARRERA;
MARIA ISABEL
RIVERA-CARRERA;
RICARDO RIVERA-CARRERA,

      Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

      Respondent.

No. 97-9513

---

**APPEAL FROM THE BOARD OF IMMIGRATION APPEALS**
**PETITION FOR REVIEW**
**(Nos. A90 615 339, A26 910 553, A72 577 382,**
**A72 577 567, A72 577 568, A72 577 569, A72 577 574,**
**A72 577 575, and A72 577 577)**

---

Submitted on the briefs:

Felix Garcia, Denver, Colorado, and Berkley Rasband, Lakewood, Colorado, for Petitioners.

David M. McConnell, Assistant Director, Lorri Shealy Unumb, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Justice Department, Washington, D.C., for Respondent.

---

Before **KELLY** , **McKAY** , and **HENRY** , Circuit Judges.

---

**PER CURIAM.**

---

Petitioner Claudio Rivera-Jimenez and his family seek review of a final order of the Board of Immigration Appeals (BIA), denying their applications for suspension of deportation. This court has jurisdiction pursuant to 8 U.S.C. § 1105a(a) (1994), as amended by the transitional rules in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996), governing judicial review. [1] Following careful review of the parties' briefs, the administrative record, and the applicable law,

---

[1] The IIRIRA altered the availability, scope, and nature of judicial review in INS cases. Because petitioners' deportation proceedings commenced before April 1, 1997, IIRIRA's permanent "new rules" do not apply to this case. *See* IIRIRA § 309(c)(1). However, because the BIA's order was filed more than thirty days after IIRIRA's September 30, 1996 date of enactment, IIRIRA's "transitional rules" apply. *See id* . § 309(c)(4); *Berehe v. INS* , 114 F.3d 159, 161 (10th Cir. 1997). None of the transitional rules bar petitioners from seeking judicial review of the BIA's final order in this case.

we grant the petition for review, vacate the BIA's decision, and remand the case for further proceedings. [2]

## Background

In May 1993, petitioners were served with orders to show cause as to why they should not be deported as having entered the United States without inspection. In subsequent administrative deportation proceedings, the immigration judge granted petitioners' applications for suspension of deportation. The INS appealed this decision to the BIA. While the appeal was pending, Congress enacted the IIRIRA which changed the requirements for suspension of deportation eligibility. In 1997, the BIA sustained the INS appeal and reversed the immigration judge. In so doing, the BIA found that petitioners had not been continuously physically present in the United States for the requisite seven years. *See* 8 U.S.C. § 1254(a)(1) (1994).

Petitioners filed a petition for review in this court. On motion of the INS, we abated the petition and, in January 1998, we remanded the case to the BIA for the purpose of considering the matter in light of the recent enactment of the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L.

---

[2] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

No. 105-100, 111 Stat. 2160 (1997).  On remand, the BIA applied the amending provisions of NACARA and again found petitioners ineligible for suspension of deportation based on their failure to establish seven years' continuous presence in the United States before service of the orders to show cause.

In their petition for review, petitioners contend that (1) the BIA erred in finding that their two-week absence from the United States in July 1986, was not brief, innocent, and casual pursuant to 8 U.S.C. § 1254(b)(2) and *Rosenberg v. Fleuti*, 374 U.S. 449 (1963); (2) the BIA erred in finding that the issuance of an order to show cause interrupts seven years of continuous physical presence; and (3) the BIA should be estopped from asserting the IIRIRA to deny petitioners' application for suspension of deportation. [3]

**Discussion**

---

[3] Petitioners argue that the BIA should be estopped from applying IIRIRA to their application due to its delay in issuing a decision on the INS appeal of the immigration judge's 1993 decision to grant petitioners' applications for suspension of deportation.  Because this issue was not raised to the BIA, we decline to address it on review.  *See Nguyen*, 991 F.2d at 623 n.3 (holding failure to raise issue to the BIA constitutes failure to exhaust administrative remedies and deprives this court of jurisdiction to address that issue).

This court reviews the BIA's factual findings for substantial evidence in the record. *Nguyen v. INS*, 991 F.2d 621, 625 (10th Cir. 1993). [4] To obtain reversal of such findings, petitioners must show that "the evidence [they] presented was so compelling that no reasonable factfinder" could find as the BIA did. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Rubio-Rubio v. INS*, 23 F.3d 273, 277 (10th Cir. 1994). This court reviews the BIA's legal determinations *de novo*, *see Nguyen*, 991 F.2d at 623. We will, however, accord deference to the BIA's legal determinations unless they are clearly contrary to the statute's language or to congressional intent. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 445-48 (1987). Our review is limited to the decision of the BIA, and not that of the immigration judge. *See Luna-Rodriguez v. INS*, 104 F.3d 313, 315 (10th Cir. 1997).

Prior to the IIRIRA, § 1254(a)(1) of the Immigration and Naturalization Act (INA) provided that the Attorney General, in her discretion, may suspend deportation of an otherwise deportable alien who (1) "has been physically present in the United States for a continuous period of not less than seven years;" (2) "is

---

[4]    IIRIRA has amended 8 U.S.C. § 1252(b)(4)(B) to provide that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Although this court has cited to § 1252(b)(4)(B) in a number of unpublished orders and judgment, *see, e.g., Fesseha v. INS*, No. 98-9537, 1999 WL 672310, **2 (10th Cir. Aug. 30, 1999) (unpublished), to date, no federal court has held that this statutory provision modifies the substantial evidence standard previously applied.

a person of good moral character;" and (3) "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien" or his lawfully admitted or citizen family. *See* 8 U.S.C. § 1254(a)(1) (1994). The IIRIRA repealed this section of the INA and replaced it with a new section setting forth the requirements for "cancellation of removal" for nonpermanent residents, 8 U.S.C. § 1229b(b) (1996), and special rules relating to the continuous physical presence requirement, 8 U.S.C. § 1229b(d). Section 1229b(b) provides in pertinent part:

> (b) Cancellation of removal and adjustment of status for certain nonpermanent residents
>
> (1) In general
>
> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--
>
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; [5]

Section 1229b(d)(1) provides in pertinent part:

---

[5]  The IIRIRA changed the seven years of continuous presence to ten years of continuous presence before filing an application for suspension of deportation. *See* 8 U.S.C. § 1229b(b)(1)(A) (1999). This provision is not made applicable to petitioners by IIRIRA's transitional rules, and therefore is only applicable to deportation proceedings commenced after IIRIRA's effective date of April 1, 1997. Petitioners continue to be governed by the seven-year requirement of 8 U.S.C. § 1254(a)(1) (1994).

>> (d) Special rules relating to continuous residence or physical presence
>>
>>> (1) Termination of continuous period
>>>
>>> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 1229(a) of this title . . . .

Besides the nomenclature--changing "suspension of deportation" to "cancellation of removal"--this section provides a number of other changes in the law germane to applications for suspension of deportation. Whereas, under the INA, deportation proceedings were initiated by an "order to show cause," under the IIRIRA, removal proceedings are initiated by a "notice to appear." *See id.* § 1229(a)(1). Under the INA, the time an alien spent in deportation proceedings counted toward the requirement for continuous physical presence. Under the IIRIRA, "any period of continuous residence or continuous physical presence shall be deemed to end when the alien is served a notice to appear." § 1229b(d)(1). The IIRIRA's "Transitional Rule with Regard to Suspension of Deportation" states that this new stop-time rule "shall apply to notices to appear issued before, on, or after the date of the enactment of this Act [Sept. 30, 1996]." IIRIRA § 309(c)(5). Petitioners argue that retroactive application of this IIRIRA provision to them is unconstitutional. In addition, petitioners assert that, because

they received an order to show cause instead of a notice to appear, the new provision is not applicable to them. Neither argument has merit.

In 1997, the BIA determined that the new stop-time provision applied to aliens who were involved in deportation proceedings prior to the IIRIRA's enactment date initiated by orders to show cause as well as by other documents. *See In re N-J-B*, Int. Dec. 3309 (BIA 1997). The Attorney General subsequently vacated the BIA's decision in *In re N-J-B*, and certified it to herself for review. *See In re Nolasco-Tofino*, Int. Dec. 3385 (BIA 1999). While her review was pending, Congress enacted the NACARA. Section 203(a) of the NACARA amended the IIRIRA, providing in pertinent part:

> (1) IN GENERAL.–Section 309(c)(5) of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (Public Law 104-208; division C; 110 Stat. 3009-627) is amended to read as follows:
>
> (5) TRANSITIONAL RULES WITH REGARD TO SUSPENSION OF DEPORTATION.--
>
> (a) IN GENERAL.-- Subject to subparagraphs (B) and (C), paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause (including those referred to in section 242B(a)(1) of the Immigration and Nationality Act, as in effect before the title III-A effective date), issued before, on, or after the date of the enactment of this Act.

In light of this amendment, the BIA determined that the new stop-time provision applied to all pending deportation proceedings regardless of the nature

of the initiating document. *See In re Nolasco-Tofino*, Int. Dec. 3385. Moreover, two federal circuits have recently concurred, holding that NACARA "resolve[d] any potential linguistic ambiguity . . . with respect to the stop-time provision." *Tefel v. Reno*, 180 F.3d 1286, 1293 (11th Cir. 1999), *petition for cert. filed*, 68 U.S.L.W. 3513 (U.S. Feb. 3, 2000) (No. 99-1314); *see also Appiah v. United States Immigration & Naturalization Serv.*, 202 F.3d 704, 708 (4th Cir. 2000). We agree with these decisions, and conclude that the IIRIRA's new stop-time rule applies to petitioners. Therefore, petitioners' period of continuous physical presence in the United States ended on May 19, 1993, the date they were served with charging documents.

This does not, however, resolve all questions raised in this case. In denying petitioners' applications for suspension of deportation, the BIA found that petitioners had not been in the United States for a continuous seven-year period prior to service of the orders to show cause. This was based on the factual finding that, in 1986, petitioner Claudio Rivera-Jimenez was apprehended by the INS and on July 19, 1986, accepted voluntary departure for himself and his family in lieu of deportation proceedings. After a failed attempt to reenter the United States immediately, petitioners hired a smuggler and reentered the United States two weeks after their voluntary departure. Therefore, at the time they were served with the orders to show cause, May 19, 1993, they were two months short

of seven years of continuous physical presence.  In their petition for review, petitioners argue that this two-week absence from the United States was "brief, casual, and innocent," 8 U.S.C. § 1254(b)(2) (1994), and therefore, should not be considered a break in their period of continuous physical presence. [6]

We agree with the INS that petitioners' two-week return to Mexico in lieu of being placed in deportation proceedings was not brief, casual or innocent. *See Hernandez-Luis v. INS*, 869 F.2d 496, 498 (9th Cir. 1989) (holding a "voluntary departure under threat of coerced deportation is not a brief, casual, and innocent absence from the United States").  This is irrelevant, however, in light of the IIRIRA's special rules relating to continuous physical presence.  *See* 8 U.S.C. § 1229b(d) (1996).  Section 1229b(d)(2) states:

> (2) Treatment of certain breaks in presence
>
> An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) of this section if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

---

[6] Under the INA, an alien was considered not to have failed in establishing seven years of continuous physical presence if any absence from the United States was "brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence." *Id.* § 1254(b)(2).  This provision is, however, missing from the IIRIRA's cancellation of removal provisions.  *See* 8 U.S.C. §1229b (1996).

This provision is made applicable to petitioners by the IIRIRA's transitional rules regarding suspension of deportation, § 309(c)(5)(A). Section 309(c)(5)(A) states in pertinent part:

> (5) **Transitional** rules with regard to suspension of deportation.--
>
> (A) In general.–Subject to subparagraphs (B) and (C), paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act [section 1229b(d) of this title] (relating to continuous residence or physical presence) shall apply to orders to show cause (including those referred to in section 242B(a)(1) of the Immigration and Nationality Act [section 1252b(a)(1) of the title], as in effect before the title III-A effective date), issued before, on, or after the date of the enactment of this Act [Nov. 19, 1997].

It is obvious that petitioners' two-week return to Mexico in 1986 was not "in excess of 90 days," nor was it "in the aggregate exceeding 180 days." *Id.* § 1229b(d)(2).

We recognize that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). We also are cognizant, however, that the Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer and the principle of deference to administrative interpretations." *Id.* at 844 (footnote omitted). Here, we have no administrative interpretation of § 1229b(d)(2), as the BIA's decision was

-11-

grounded entirely on its conclusion that petitioners had not established the requisite period of continuous physical presence under the old "brief, casual, and innocent" standard of § 1254(b)(2). We therefore remand to the BIA for reconsideration, in the first instance, of petitioners' applications in light of § 1229b(d)(2).

Accordingly, the petition for review is GRANTED, the decision of the BIA is VACATED, and the matter is REMANDED for further proceedings in accordance with this opinion.