UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRIAN LOCKETT;
MICHELLE HUNT LOCKETT,

    Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

    Respondent.

No. 00-9510

---

ORDER
Filed April 9, 2001

---

Before **BRORBY** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

---

Respondent's motion to publish the order and judgment dated February 26,
2001, is granted.  A copy of the published opinion is attached.

Entered for the Court
Patrick Fisher, Clerk

By:
    Keith Nelson
    Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 26 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BRIAN LOCKETT;
MICHELLE HUNT LOCKETT,

      Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

      Respondent.

No. 00-9510

---

**ON PETITIONS FOR REVIEW FROM**
**THE BOARD OF IMMIGRATION APPEALS**
**(BIA Nos. A26 377 506 & A26 377 507)**

---

Submitted on the briefs:

Laura L. Lichter of Lichter & Associates, P.C., Boulder, Colorado,
for Petitioners.

John J. Andre, Senior Litigation Counsel, Robbin K. Blaya, Attorney, Office of
Immigration Litigation, Civil Division, Department of Justice, Washington, D.C.,
for Respondent.

---

Before **BRORBY** , **PORFILIO** , and **BALDOCK** , Circuit Judges.

---

**BALDOCK** , Circuit Judge.

Petitioners Brian Lockett and Michelle Hunt Lockett request review of a final order of the Board of Immigration Appeals (BIA) denying their applications for suspension of deportation. This court has jurisdiction pursuant to 8 U.S.C. § 1105a(a), as amended by the transitional rules of section 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996). We deny the petition for review. [1]

Both petitioners conceded deportability and applied for suspension of deportation. The charges against Michelle Hunt Lockett pertaining to fraud and immigration intent were not upheld and are not part of this appeal. Both petitioners are natives and citizens of the United Kingdom who lawfully entered the United States but failed to maintain status, thereby becoming subject to deportation.

Petitioners resided in the United States since the early 1980's, each leaving the country for various periods of time. In 1992, they followed their attorney's advice to turn themselves in and file an application for suspension of deportation based on their continuous physical presence in the United States for over seven years, under the law then in effect. While the appeal to the BIA was pending,

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Congress passed the IIRIRA. Because petitioners' deportation proceedings began before April 1, 1997, and the BIA's order was filed more than thirty days after September 30, 1996, the date IIRIRA was enacted, the transitional rules apply. Rivera-Jimenez v. INS, 214 F.3d 1213, 1215 n.1 (10th Cir. 2000) (per curiam). Later, also while petitioners' case was pending with the BIA, Congress enacted the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, 111 Stat. 2160 (1997), which clarified that the IIRIRA "stop-time rule" applied in deportation proceedings filed before the IIRIRA's enactment.

In their petition for review to this court, petitioners claim (1) the BIA erred in applying the IIRIRA stop-time rule, as clarified by the NACARA, which provides more limited relief than the rules in effect at the time petitioners filed their application for suspension of deportation; (2) even if the initial seven-year period of continuous residency is disregarded, they are again qualified for suspension of deportation because they accrued an additional seven-year period of continuous residency subsequent to the issuance of the order to show cause, and the BIA should be estopped by its delay in processing their case; and (3) application of the NACARA to them would violate their rights to due process and equal protection by changing the stop-time rule retroactively.

This court reviews the BIA's factual findings for substantial evidence in the record. To obtain reversal of such findings,

> petitioners must show that the evidence [they] presented was so compelling that no reasonable factfinder could find as the BIA did. This court reviews the BIA's legal determinations *de novo* . We will, however, accord deference to the BIA's legal determinations unless they are clearly contrary to the statute's language or to congressional intent. Our review is limited to the decision of the BIA, and not that of the immigration judge.

Rivera-Jimenez , 214 F.3d at 1216 (internal citations and quotations omitted).

Before the enactment of the IIRIRA, the Attorney General had discretion to suspend deportation of an alien who, among other things, had been continuously present in the United States for not less than seven years. See 8 U.S.C. § 1254(a)(1) (repealed). The IIRIRA replaced that section with requirements for "cancellation of removal" for nonpermanent residents and new rules for the continuous physical presence requirement. 8 U.S.C. § 1229b(b) and (d). Under the new law, any period of continuous physical presence in the United States is deemed to end upon service of a notice to appear. Id. § 1229b(d)(1). The IIRIRA did not state whether the new stop-time rule applied to aliens who were involved in deportation proceedings at the time the IIRIRA was enacted. The NACARA, however, resolved the question by stating that the IIRIRA's continuous physical presence requirements apply to all deportation proceedings, including those initiated before the IIRIRA's enactment. 8 U.S.C. § 1101 note. The new stop-time rule provides that an alien is ineligible for suspension of deportation or cancellation of removal if, during the seven years prior to service of the charging

-4-

documents, he or she was absent from the United States for a period of ninety days, or he or she was absent for an aggregate period of 180 days. 8 U.S.C. § 1229b(d)(2).

Neither petitioner challenges the government's statement of his or her respective absences from the United States during the seven years prior to service of the orders to show cause. Each petitioner was absent for at least one period of more than ninety days and each exceeded 180 days in the aggregate. Therefore, neither petitioner was eligible for suspension of deportation or cancellation of removal. Rivera-Jimenez makes it clear that the IIRIRA stop-time rule applies to petitioners. 214 F.3d at 1217; accord Bartoszewska-Zajac v. INS, 237 F.3d 710, 713 (6th Cir. 2001) (collecting cases).

Petitioners maintain that they accrued an additional period of seven years' continuous physical presence after they were served with the charging documents and the BIA's delay in processing their applications should estop it from applying the IIRIRA to their applications. But they have not identified where this argument was raised to the BIA, as required by 10th Cir. R. 28.2(C)(2), nor have they challenged the BIA's claim that they failed to raise it to the BIA. Therefore, we do not address it on review. Rivera-Jimenez, 214 F.3d at 1215 n.3.

Rivera-Jimenez also forecloses petitioners' due process argument that application of the new stop-time rule, enacted while their cases were pending,

-5-

impaired rights they had when they turned themselves in. The constitutional challenge to applying the new stop-time rule retroactively has been rejected. Id. at 1217.

Finally, we address petitioners' equal protection challenge. They claim that the NACARA violates equal protection because it removes the stop-time bar for only certain foreign nationals, not including those from the United Kingdom, such as petitioners. Equal protection challenges in immigration matters warrant very deferential review. Mathews v. Diaz, 426 U.S. 67, 81-82 (1976). Congress may designate certain classes of aliens without judicial interference, as "'a fundamental sovereign attribute exercised by the Government's political departments.'" Fiallo v. Bell, 430 U.S. 787, 792 (1977) (quoting Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953)). Congress' reason for treating some foreign nationals more favorably with respect to the stop-time rule was to ease the burden of administration for aliens from countries torn apart by war and oppression. See 143 Cong. Rec. S12261 (daily ed. Nov. 9, 1997) (statement of Sen. Abraham). The stated reason is facially legitimate; therefore, this court will not examine Congress' classification of aliens. Fiallo, 430 U.S. at 794-95. Accordingly, we reject petitioners' equal protection challenge. E.g., Ram v. INS, No. 99-70918, 2001 WL 253195, *7 (9th Cir. Mar. 15, 2001) (rejecting equal

protection challenge to NACARA based on different treatment for different aliens; collecting cases).

The petition for review is DENIED.