F I L E D
**United States Court of Appeals
Tenth Circuit**

**JAN 22 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DAVID NYOMBI,

      Petitioner,

v.

JOHN ASHCROFT, United States
Attorney General,

      Respondent.

No. 02-9563
(BIA No. A75 376 902)
(Petition for Review)

**ORDER AND JUDGMENT** *

Before **BRISCOE** and **McKAY** , Circuit Judges, and **BRORBY** , Senior Circuit
Judge.

Petitioner David Nyombi seeks review of the Board of Immigration Appeals

(BIA) decision denying his application for asylum, withholding of removal, and

relief under the Convention against Torture. The BIA affirmed the oral decision

of the immigration judge (IJ) without analysis, making the IJ's decision the final

agency determination for purposes of appellate review. *See Tsevegmid v.*

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

*Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003). We have jurisdiction to consider this petition for review of the agency's denial of asylum. *See id.* at 1234.[1]

On appeal, Mr. Nyombi does not address his claim under the Convention against Torture; therefore it is waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

The IJ denied Mr. Nyombi's applications for asylum and withholding of removal based solely on his conclusion that Mr. Nyombi's version of the facts was not credible, a finding of fact. *See Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003). The applicable standard of review for such findings, taken verbatim from the Illegal Immigration Reform & Immigrant Responsibility Act (IIRIRA), is that they are deemed "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). That standard does not, however, require us to uphold the IJ's negative credibility finding unless we determine that a reasonable adjudicator would find Mr. Nyombi's story credible, as argued by respondent in this case. *See* Resp. Br. at 24. Many circuits have held that the standard set out in § 1252 codifies the substantial evidence standard previously set forth by the Supreme Court in *INS v.*

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

*Elias-Zacarias*, 502 U.S. 478, 481 (1992). *See Dia v. Ashcroft*, No. 02-2460, 2003 WL 22998113, *n.17 (3d Cir. Dec. 22, 2003) (en banc) (collecting cases); *Rivera-Jimenez v. INS*, 214 F.3d 1213, 1216 n.4 (10th Cir. 2000) ("[N]o federal court has held that this statutory provision modifies the substantial evidence standard previously applied."). Under the substantial evidence standard, we do not weigh the evidence or evaluate Mr. Nyombi's credibility, but we do examine the agency's determination to see whether there is a rational connection between the credibility determination and the stated reasons therefor. *See Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001). Because an alien's testimony alone may support an application for asylum, 8 C.F.R. § 208.13(a), an IJ must give "specific, cogent reasons" for disbelieving the testimony. *See Secaida-Rosales*, 331 F.3d at 307 (further quotation omitted).

Mr. Nyombi, a native Ugandan, submitted two applications for asylum. The first he completed with help from an INS interpreter, Mr. Muwenga, who told Mr. Nyombi to say that he was a member of a human rights organization in Uganda. Mr. Nyombi's first application stated that he and his family members were active members of Human Rights Africa. Admin. R. at 245-55. Before an asylum officer, Mr. Nyombi testified that he worked part-time for this organization, which had 1200 members in his area, and that he was the Assistant Director of a local office of the organization, where he taught children not to join

the rebel movement. He also testified to the events resulting in the deaths of his parents and his own incarceration, mistreatment, and interrogation by government soldiers. He stated that an official of the human rights organization secured his release from prison, after which time he came to this country. *Id.* at 116. A second asylum officer concluded that Mr. Nyombi was not eligible for asylum. The officer noted that his application was similar to others which had been referred to fraud investigations involving Mr. Muwenga and other applicants from Uganda and Ghana. The officer concluded that Mr. Nyombi's allegations lacked credibility because of their similarity to those in other applications and by recent reports from Uganda about the treatment of human rights organization members. *Id.* at 117.

After his application was referred to the immigration court, Mr. Nyombi sought counsel. He submitted a second application, without the allegations involving Human Rights Africa, but otherwise substantially similar to the facts in his original application. *See id.* at 129-38. At his hearing before the IJ, Mr. Nyombi acknowledged that his allegations about Human Rights Africa were false, *id.* at 101, but stated that the balance of his story was true. His application for asylum was based on imputed political opinion. Mr. Nyombi testified that his father was arrested by government soldiers on suspicion of harboring rebels on his farmland. When his father resisted arrest, he was shot in front of his home.

His mother was then taken by the soldiers. *Id.* at 73-78. When Mr. Nyombi went in search of his mother in prison, he was himself incarcerated, suffering beatings and other mistreatment, and interrogated about his father's activities and his own involvement with the rebels. *Id.* at 80-91. Mr. Nyombi testified that it was his employer, not a member of Human Rights Africa, who secured his release from prison. *Id.* at 92-94.

Unlike the asylum officer, the IJ did not base his credibility finding on the admitted fact that Mr. Nyombi's first application contained falsehoods. He alluded to the differences between the two applications, but gave three specific reasons for finding Mr. Nyombi not credible–reasons separate and apart from Mr. Nyombi's allegations about Human Rights Africa. First, the IJ found it incredible that Mr. Nyombi was imprisoned and abused in light of the fact that he was himself a government employee. [2] *Id.* at 49. The IJ, while acknowledging the abysmal human rights record in Uganda, opined that "a government employee is usually regarded as being loyal until proven otherwise." *Id.* As Mr. Nyombi argues on appeal, this statement has no support in the record. While we normally defer to the IJ on matters of credibility, "that deference is expressly conditioned on support in the record." *Dia*, 2003 WL 22998113 at *14 (further quotation

---

[2] Mr. Nyombi testified that he worked as an agricultural assistant at Mityana Station, a district funded by the government. Admin. R. at 72-73.

omitted). Further, the IJ's conclusion ignores Mr. Nyombi's testimony that he was interrogated about his involvement with the rebels because his father had been accused by village chiefs and resistance counsel members of harboring rebels on his land and giving them food.

Second, the IJ notes that Mr. Nyombi's first application contained allegations about his alleged involvement with Human Rights Africa, which the IJ concluded demonstrated that Mr. Nyombi "spent a great deal of time manufacturing his story." Admin. R. at 50. The IJ also stated that it was difficult to believe that his second application was true because Mr. Nyombi waited nearly a year and a half before coming forward to admit to the falsehoods in the first application. *Id.* These statements do not support the IJ's negative credibility finding. Speculation about how much time Mr. Nyombi spent on his story about Human Rights Africa does not suggest that the balance of his story is false, and fails to acknowledge or address the fact that Mr. Nyombi did come forward and admit the falsehoods at his next scheduled appearance before the agency, and explained that he was told to include the falsehoods by Mr. Muwenga. The IJ's blanket rejection of Mr. Nyombi's testimony also fails to acknowledge the documentary evidence which supports key points of Mr. Nyombi's story about his parents' deaths and his employment in Uganda. *See id.* at 139-46.

The IJ's third stated reason was his rejection of a psychologist's opinion that Mr. Nyombi suffers from posttraumatic stress disorder (PTSD). The IJ appears to have substituted his own opinion for that of a medical professional when he stated that if Mr. Nyombi were suffering from PTSD, "I do not believe it is from the allegations that he has made." *Id.* at 50. Essentially, the IJ started with the conclusion that Mr. Nyombi's story was not credible; therefore this reasoning does not support his credibility determination.

We conclude that the IJ's credibility determination does not merit deference in this case because it "is based on speculation, conjecture, or an otherwise unsupported personal opinion," which cannot be upheld "because it will not have been supported by such relevant evidence as a reasonable mind would find adequate." *Dia*, 2003 WL 22998113 at *14. We need not, and are not, concluding that Mr. Nyombi's testimony is credible. *See id.* at *24. Because the IJ's decision lacks support from substantial evidence in the record, the BIA improperly affirmed the decision. Accordingly, we GRANT the petition for review and VACATE the BIA's order. The matter is REMANDED to the agency for further proceedings on Mr. Nyombi's application.

Entered for the Court

Wade Brorby
Senior Circuit Judge