**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 21, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

OCTAVIO GUTIERREZ-OROZCO,
a/k/a Octavio Orozco,

     Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

     Respondent.

No. 15-9534

_____

**Petition for Review of Decision of the**
**Board of Immigration Appeals**
_____

Submitted on the briefs:[*]

J. Shawn Foster, Perretta Law Office, West Jordan, Utah, for Petitioner.

Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Linda S. Wernery, Assistant Director; Thankful T. Vanderstar, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.
_____

Before **BACHARACH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.
_____

**O'BRIEN**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

_____

Octavio Gutierrez-Orozco (Gutierrez), a native and citizen of Mexico, entered the United States illegally. An immigration judge (IJ) denied his application for cancellation of removal and his alternative request for voluntary departure. The IJ decided his generally credible testimony was insufficiently persuasive, considering all of the other evidence, to meet his burden to prove ten years of continuous physical presence in the United States. The Board of Immigration Appeals (BIA) agreed. So do we.

## I. Background

Gutierrez insists he entered the United States in March 1996. He remembers that date because his wife, who remained in Mexico, was pregnant with the second of their four children, who was born in September 1996. He claims to have lived in the United States continuously since then, except for a brief, two-month trip back to Mexico in mid-1999 when his wife was ill — after which border patrol twice hindered his reentry. His wife joined him here sometime in 2000.

Gutierrez's immigration troubles began in February 2008, when a domestic violence incident with his teenage son led to a simple assault conviction the next month. Shortly thereafter, the Department of Homeland Security issued a Notice to Appear, charging him as removable under the Immigration and Nationality Act

(INA). Gutierrez conceded removability but requested cancellation of removal[1] or, in the alternative, voluntary departure. The IJ conducted a hearing and concluded Gutierrez was statutorily ineligible for cancellation of removal because he did not demonstrate a ten-year continuous physical presence in the United States from April 1, 1998, to April 1, 2008;[2] good moral character for that time period; and an exceptional and extremely unusual hardship. The IJ also denied voluntary departure because Gutierrez failed to maintain good moral character during the relevant time frame and, alternatively, as an exercise of discretion.

Gutierrez appealed to the BIA for relief from the IJ's decision. It denied relief, deeming him ineligible for cancellation of removal because he failed to establish a ten-year continuous physical presence in the United States. It also concluded the record supported the IJ's discretionary denial of voluntary departure. Gutierrez requests our review of the BIA's decision. He is not entitled to relief.

---

[1] The INA authorizes the Attorney General to cancel removal of an alien who is inadmissible or deportable if the alien satisfies four criteria: (1) the alien has been physically present in the United States for a continuous period of not less than ten years preceding his application date; (2) the alien has been a person of good moral character during that period; (3) the alien has not been convicted of certain offenses; and (4) "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1).

[2] Under the stop-time rule in 8 U.S.C. § 1229b(d)(1), any period of continuous physical presence in the United States is deemed to end upon service of a notice to appear. Gutierrez accepted service on March 25, 2008, so the relevant time period is actually March 25, 1998, through March 25, 2008.

## II. Discussion

A single BIA member affirmed the IJ's decision in a brief order under 8 C.F.R. § 1003.1(e)(5). We review that order as the final agency determination, limiting our review to the issues specifically addressed therein. *Diallo v. Gonzales*, 447 F.3d 1274, 1278-79 (10th Cir. 2006). But "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it," *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007), so as "to give substance to the BIA's reasoning," *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009).

We review the BIA's findings of fact under the substantial-evidence standard. *Rivera-Jimenez v. I.N.S.*, 214 F.3d 1213, 1216 (10th Cir. 2000). "[O]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). This standard is "highly deferential." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004). To obtain reversal of factual findings, a petitioner must show the evidence he presented "was so compelling that no reasonable factfinder could find as the BIA did." *Rivera-Jimenez*, 214 F.3d at 1216 (internal quotation marks omitted). We review the BIA's legal conclusions de novo, though we accord them deference "unless they are clearly contrary to the statute's language or to congressional intent." *Id.*

### A. Cancellation of Removal

An alien seeking relief from removal bears the burden of establishing he satisfies the eligibility requirements and "merits a favorable exercise of discretion."

4

8 U.S.C. § 1229a(c)(4)(A).  Because the BIA based its decision on limited grounds, we need only answer one question:  Did Gutierrez establish his continuous physical presence in the United States for the applicable ten-year period?  He claims to have presented sufficient evidence on this subject through his testimony — he entered the United States in 1996 — and eight affidavits from friends and relatives who say he has been living here since 1997.  We are unpersuaded.

## 1.  Testimony

According to Gutierrez's testimony at his removal hearing he entered the United States in March 1996.  R. at 156.  But he provided no details about his whereabouts or means of sustenance from the moment of purported entry until his employment paper trail began in August 1999.  Despite this gap, he seems to argue his limited testimony was enough because the IJ did not make an adverse credibility determination.  *See* Br. for Pet'r at 9 ("[T]he judge did not specifically find his testimony to be not credible for purposes of meeting his burden of proof."); *id.* at 10 ("The Immigration Judge discounted Mr. Gutierrez's testimony though she did not make any specific finding that he was not credible.").

But credibility alone is not determinative under the guidelines governing an IJ's evaluation of an applicant's testimony in a removal proceeding:  "[T]he immigration judge will determine whether or not the testimony is credible, is persuasive, *and* refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof," weighing "the credible testimony along with other evidence of record."  8 U.S.C. § 1229a(c)(4)(B) (emphasis added).  Thus,

5

even credible testimony may not be "persuasive or sufficient in light of the record as a whole." *Doe v. Holder*, 651 F.3d 824, 830 (8th Cir. 2011) (explaining the statute contemplates an alien's testimony may be credible but not persuasive, "for otherwise the second determination would be superfluous"); *see also Aden v. Holder*, 589 F.3d 1040, 1044-45 (9th Cir. 2009) (applying a similar interpretation to comparable text for asylum proceedings in 8 U.S.C. § 1158(b)(1)(B)(ii)).

Here, "other evidence of record" calls into question the persuasiveness of Gutierrez's testimony. His application lists an entry date of "02/1996." R. at 325-26. And Gutierrez admitted (in a hearing regarding his request for voluntary departure) to having entered the United States via California on August 17, 1999 — a date his previous lawyer echoed when discussing Gutierrez's "life of *almost* 10 years," *id.* at 121-22 (emphasis added). Gutierrez ultimately disclaimed this testimony and attributed it to nervousness. But the later entry date lines up neatly with the employment-related documents he submitted to substantiate his application for cancellation of removal — including the Department of the Treasury's assignment of a tax identification number to him on September 14, 1999, and tax returns, W-2 forms, earnings statements, and other proof-of-income forms bearing dates in the 1999-to-2008 range. At the same time, documentary evidence for the 1996-to-1999 range is conspicuously absent.

## 2. Affidavits

The affidavits Gutierrez submitted to try to fill the gap between 1996 and 1999 are equally unpersuasive (and a bit confusing since they all attest "Octavio has been

6

living in the U.S. since 1997," *id.* at 410-17, not 1996). All eight affidavits hail from the same template, with three fill-in-the-blanks and three typewritten, boilerplate sentences.

The IJ articulated a host of deficiencies in the affidavits, *id.* at 95-96, and the BIA referenced and incorporated that discussion into its decision concluding the affidavits do not establish Gutierrez's presence in the United States since 1998, *id.* at 3-4. The same deficiencies motivate our like conclusion: the affidavit statements do nothing to corroborate Gutierrez's testimony in a meaningful way. The critical information — the entry date — is presented only via a boilerplate statement. Further, the affidavits contain minimal personal information about the affiants and no information as to Gutierrez's location in the United States during the applicable time periods.

Gutierrez's evidence was not "so compelling that no reasonable factfinder could find as the BIA did." *Rivera-Jimenez*, 214 F.3d at 1216 (internal quotation marks omitted). He was required to establish his physical presence in the United States from at least March 25, 1998. But he convincingly established such presence only from 1999 to 2008—short of the requisite ten years.

**B. Voluntary Departure**

Gutierrez also challenges the discretionary denial of his application for voluntary departure, but we do not have jurisdiction to review that decision. "No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) of this section . . . ." 8 U.S.C. § 1229c(f);

7

*see also* 8 U.S.C. § 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review —

(i) any judgment regarding the granting of relief under section . . . 1229c . . . of this

title."). "The agency's decision not to grant voluntary departure is . . . discretionary

and outside our jurisdiction in the absence of a constitutional or legal question,"

*Munis v. Holder*, 720 F.3d 1293, 1296 (10th Cir. 2013), and this court takes a

"restrictive view" of what constitutes a constitutional claim or question of law,

*id.* at 1295. Gutierrez neither counters the agency's jurisdictional argument nor

presents a constitutional claim or question of law at issue. The voluntary departure

determination is outside our purview.

### III. Conclusion

We deny the petition for review of the removal order. We dismiss the petition

for review of the discretionary decision on voluntary departure for lack of

jurisdiction.