**Laura Renata RUBIO–RUBIO, also known as Laura Renata Woods, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–9515.

United States Court of Appeals, Tenth Circuit.

April 25, 1994.

Ann Allott, Littleton, CO, for petitioner.

Marshall Tamor Golding, U.S. Dept. of Justice (Frank W. Hunger, Asst. Atty. Gen. Richard M. Evans, Asst. Director, Office of Immigration Litigation, and Stewart Deutsch, Office of Immigration Litigation, U.S. Dept. of Justice, on the brief), Washington, DC, for respondent.

Before WHITE, Associate Justice (Retired),* ANDERSON, and BALDOCK, Circuit Judges.

WHITE, Associate Justice (Retired).

Section 244(a)(1) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1254(a)(1), provides that, at her discretion, the Attorney General may suspend deportation of an otherwise deportable alien who "has been physically present in the United States for a continuous period of not less than seven years . . . ; was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien. . . ." Section 244(b)(2), 8 U.S.C. § 1254(b)(2), adds that "[a]n alien shall not be considered to have failed to maintain continuous physical presence in the United States under paragraphs (1) and (2) of subsection (a) if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence." Petitioner Laura Renata Rubio–Rubio asks us to set aside the decision of the Board of Immigration Appeals that she had failed to maintain continuous physical presence within the meaning of § 244(a)(1) and 244(b)(2) and, hence, did not qualify for suspension of deportation.[1]

---

* The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

1. 8 U.S.C. § 1103 permits the Attorney General to delegate her powers over the administration of our immigration laws. 8 C.F.R. § 3.0 creates the Executive Office for Immigration Review, the Director of which is responsible for supervising the Board of Immigration Appeals and the Office of the Chief Immigration Judge; the Director is authorized to redelegate his powers. 8 C.F.R. § 3.1 creates the Board of Immigration Appeals in the Department of Justice. The Board is au-

thorized under 8 C.F.R. § 3.10 to exercise appellate jurisdiction, which includes appeals from decisions of immigration judges dealing with deportation and exclusion. 8 C.F.R. § 3.1(d) provides that when determining cases, the Board "shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case." The Board is not bound by the immigration judge's order and may make its own determinations de novo. Parcham v. INS, 769 F.2d 1001, 1005 n. 3 (4th Cir.1985). Our review is limited to the decision of the Board. Elnager v. INS, 930 F.2d 784, 787 (9th Cir.1991).

## I.

Petitioner was born in Mexico and first arrived in the United States on November 19, 1983, when she was twelve years old. She was admitted as a visitor with permission to remain for six months. Her last extension expired on May 19, 1984. On March 24, 1987, petitioner departed for Mexico and returned to the United States on January 3, 1988. At the time of her departure, her mother and aunt were living in the United States. Neither had legal status in this country. Her lawful permanent resident brother lived in Japan. Her sister, grandmother, an aunt, uncle, and cousins lived in Mexico. Her relationship with her mother was unsatisfactory and she had been living with friends or her aunt for some months. Her aunt, however, asked her to leave and she did not wish to impose further on friends. An uncle counselled her that she should return to Mexico, which she did. At that time, according to her testimony, she intended to live in Mexico and complete her education there.

After three weeks in Mexico she decided to return to the United States because the schools in Juarez, Mexico, would not accept the credits she had earned in American schools and, hence, she could not complete her education in Mexico as she had planned. In order to earn money to return to the United States, she first worked in a meat packing plant in Juarez and subsequently moved to Mexico City where she worked as a secretary to an attorney while living with her brother and his wife. Finally, she was able to communicate with her mother who helped finance her return to this country, which occurred in January, 1988. Because she admitted in deportation proceedings brought by the Immigration and Naturalization Service (the "Service") that she had not complied with the conditions of her reentry, she was subject to deportation and the immigration judge so found.

Petitioner filed a petition for suspension of deportation, however, which the immigration judge granted. Ordinarily, the judge ob-

served, petitioner's stay in Mexico would not be found to be brief and casual; but it was surely innocent, and because petitioner was only sixteen years of age it was deemed questionable whether she could make an informed decision that should bind her. Certified Administration Record (hereafter "C.A.R.") at 41. The judge concluded that the circumstances faced by petitioner in 1987 were "sufficient to render her decision to leave and go back to Mexico as one which was made under what might be termed constructive duress." *Id.* Petitioner's decision to depart from the United States "was one of necessity and not of preference," *id.* at 42, and, hence, her absence from the United States was considered to be brief, casual, and innocent and not as meaningfully interrupting her presence in the United States.

The Board sustained the Service's appeal and vacated the decision by the immigration judge. The Board observed that the physical presence requirement of § 244(a)(1) "is not subject to a hard and fast construction." C.A.R. at 4. But after examining the record before it, the Board concluded that petitioner's "9-month-long stay in Mexico cannot be characterized as a brief sojourn outside the United States. Nor can [petitioner's] trip be considered a casual visit since she went to Mexico with the intent of living there permanently and she engaged in employment while there." *Id.* at 5. The Board therefore found that there had been a meaningful interruption of petitioner's physical presence in the United States within the meaning of § 244(b)(2).[2]

We affirm the Board's decision and dismiss the petition for review.

## II.

In 1984, in *INS v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401, the Supreme Court held that the seven-year continuous physical presence requirement to qualify for suspension of deportation under § 244(a)(1) must be strictly construed in order to conform to congressional intent. The

2. The immigration judge had also found that not suspending deportation would amount to extreme hardship to petitioner. But, given its hold-

ing on the continuous presence requirement, the Board found it unnecessary to reach the Service's challenge to this ruling.

Court, thus, rejected the more flexible standard that some of the courts of appeals and the Board itself had been applying. In 1986, however, Congress decided to relax the strict standard that the statute required. It did so by adding § 244(b)(2) which provided that a brief, casual, and innocent absence from the United States, one that did not meaningfully interrupt an alien's continuous physical presence, would not constitute a violation of the seven-year presence requirement. The language of the amendment reflected the flexible standard applied by some courts of appeals prior to *Phinpathya*. That standard had its roots in *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), a case dealing with a different section of the Immigration and Nationality Act. None of the other independent requirements of § 244(a)(1) was otherwise altered by Congress, and we are cited to no case in any court of appeals subsequent to the adoption of § 244(b)(2) dealing with the application of its brief, casual, and innocent language.

██ Petitioner asserts that the Board erred in holding that her stay in Mexico was neither brief nor casual. Our review of the Board's interpretation and application of these statutory terms and, therefore, our review of the Board's disposition of petitioner's argument on this score, is guided by the two-step procedure set out in *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Furr's/Bishop's Cafeterias, L.P. v. INS*, 976 F.2d 1366, 1369 (10th Cir.1992). First, if Congress has directly spoken to the precise question at issue, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–843, 104 S.Ct. at 2781. But, if Congress has not addressed the precise question at issue, we are not free to impose our own construction on the statute; rather,

we must ask whether the agency's construction of the statutory language is a permissible one. If it is, we must defer to the Board's decision. *Id.* at 843–844, 104 S.Ct. at 2782–83.

██ The first *Chevron* step raises an issue of law, one for a reviewing court's *de novo* decision and one that need not detain us long in this case. The words "brief" and "casual" hold no single, precise meaning either generally or as used in § 244(b)(2), nor has petitioner advanced any argument that they do. Congress itself did not attempt to endow them with any particular meaning either, leaving them statutorily undefined. It cannot, in sum, reasonably be said that Congress has unambiguously spoken to whether petitioner's nine-month stay in Mexico could or could not statutorily qualify as brief and casual.

██ Nor has petitioner convinced us that the Board's decision in this case was an impermissible construction or application of the critical words of § 244(b)(2).[3] That section left the Board with the considerable task of spelling out the meaning of the language that Congress had for the first time directed the Service and the Board to apply in suspension cases. Whether the Board could proceed on the basis that the language of the 1986 amendment was newly coined by Congress, defining the terms brief and casual without reference to pre-*Phinpathya* case-law, we need not decide for the Board did not take that course in this case. Rather, in attempting to give meaning to § 244(b)(2)'s amendment of § 244(a)(1), the Board explicitly recognized that the brief and casual language of the amendment had originated in *Fleuti* and cited two decisions by the Ninth Circuit, *Git Foo Wong v. INS*, 358 F.2d 151 (1966) and *Wadman v. INS*, 329 F.2d 812 (1964), applying *Fleuti* in suspension cases. *See* C.A.R. at 4–5. It observed that because

**3.** There is no regulation issued by the Service, acting for the Attorney General, that purports to define those words. In 1987, however, the Service issued a regulation defining the departures from the United States that would be considered "brief, casual, and innocent" within the meaning of § 245A(a)(3) of the Act, as amended by the Immigration Reform and Control Act of 1986, as those authorized by the Service "of not more than thirty (30) days for legitimate emergency or humanitarian purposes...." The regulation was struck down in *Catholic Social Services, Inc. v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988), *aff'd.* 956 F.2d 914 (9th Cir.1992), *vacated and remanded on other grounds*, —— U.S. ——, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993), because requiring the approval of the Service was deemed inconsistent with the statute.

of the enactment of § 244(b)(2), the continuous physical presence requirement of § 244(b)(2) should not be "subject to a hard and fast construction." C.A.R. at 4. Following this approach was surely a permissible one.

After reviewing the record and the decision of the immigration judge, the Board went on to conclude that petitioner's stay in Mexico "was not a brief or casual journey within the brief, casual, and innocent standard set forth in *Rosenberg v. Fleuti, supra,* and its progeny." C.A.R. at 5. And, we cannot say as a matter of law that the statute, even interpreted as flexibly as *Fleuti* and related cases suggest, would never permit the Board to decide that nine months was too long to be "brief" and that a trip could not be "casual" because an alien "went [abroad] with the intention of living there permanently and—engaged in employment while there." *Id.*

Petitioner nevertheless avers that the Board's decision is not supported by substantial evidence. But, as for not being "brief," the evidence reveals that petitioner was away for nine months, and whether this was too long to be "brief" in this case was for the Board to decide. As for not being "casual," the Board made a finding that petitioner went to Mexico with the intent to live there permanently and worked there for several months. Furthermore, there was no evidence when she departed that she ever intended to return. We cannot say that a reasonable fact finder could not agree with the Board and on the facts present here, would be required to hold that petitioner's stay in Mexico was both brief and casual. *INS v. Elias–Zacarias,* —— U.S. ——, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992).

There are those statutes that contain ambiguous language "which can only be given concrete meaning through a process of case-by-case adjudication." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). It is very likely that § 244(b)(2) is one of those laws. In filling out the meaning of its terms, we are obliged to "respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program." *Id.*

Petitioner insists that the Board failed to follow the teachings of certain pre–1986 decisions applying the *Fleuti* standard to suspension cases. The submission is unpersuasive for several reasons. First, there is nothing in the § 244(b)(2) or its legislative history indicating that Congress intended the Board to be bound by every court of appeals or district court decision construing and applying the *Fleuti* formulation before 1984. Secondly, the Board plainly considered that its holding was consistent with the holdings of those cases it referred to as the "progeny" of *Fleuti,* and we are not convinced that the Board was incorrect in this respect. In each of the cases that petitioner asserts required a different result, the departing alien never intended to live abroad and planned to return to the United States. Thirdly, petitioner relies heavily on *Kamheangpatiyooth v. INS,* 597 F.2d 1253 (9th Cir.1979), but there the trip was plainly for a limited time and petitioner had the express intention of returning to the United States. That case did indicate that neither an absence of six or sixteen months nor the purpose of the trip was determinative of the brief and casual inquiry; indeed, it went on to hold that the touchstone in analyzing any absence from the country should be how the absence bears on the question of the hardship and unexpectedness of exposure to expulsion that the alien might suffer. Now as then, however, such a view ignores the fact that hardship is but one of several separate preconditions that § 244(a)(1) imposes upon the Attorney General's discretion to suspend deportation. The Board recognized as much in this case, holding against petitioner on brief and casual grounds without ever reaching the immigration judge's conclusion that petitioner would suffer extreme hardship unless suspension were granted.

Petitioner also insists that the Board ignored her claims that at age sixteen she was too young to make a decision of her own[4] and that her departure was an involun-

---

4. Petitioner argues that the State Department, the Service, and Colorado law recognize the in-

tary act taken under duress and, hence, was a brief and casual visit. The Board, however, reviewed the record containing her testimony, had the immigration judge's opinion before it, referred in its opinion to the immigration judge's reasoning for holding petitioner's absence to be brief and casual, as well as to the petitioner's claims, and necessarily rejected them in arriving at its decision. We think these actions sufficed for the Board to satisfy its obligation to provide this court with a reasoned basis for rejecting petitioner's age and duress claims. *See, e.g., Turri v. INS,* 997 F.2d 1306 (1993); *Panrit v. INS,* 19 F.3d 544 (1994).

\* \* \*

As we see it, the Board's construction of the statute is a permissible one and its decision is supported by substantial evidence. We therefore affirm and dismiss the petition for review.

*So ordered.*

capacity of minors under the age of sixteen to make independent decisions. However that may be, petitioner was sixteen when she decided to leave the United States and live in Mexico; and we note that petitioner made her own decision to quit living with her mother and her own decision not to impose on friends in the United States again by seeking permission to live with them rather than leave the country.