**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BO HAE LEE,

     Petitioner,

v.

MICHAEL B. MUKASEY, United
States Attorney General,[1]

     Respondent.

No. 06-9594

---

**ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF**
**IMMIGRATION APPEALS**
**(No. A96–202–290)**

---

David M. Cook, Kenneth Y. Geman & Associates, Chicago, IL, for Petitioner.

Joanne E. Johnson, Attorney, (Anh-Thu P. Mai, Senior Litigation Counsel, with
her on the brief), U.S. Department of Justice, Washington, D.C., for Respondent.

————————————————

Before **KELLY**, **McKAY**, and **HARTZ**, Circuit Judges.

————————————————

**McKAY**, Circuit Judge.

---

[1]On November 9, 2007, Michael B. Mukasey became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Mukasey is substituted for Alberto R. Gonzales as the
respondent in these matters.

Petitioner Bo Hae Lee seeks judicial review to determine whether an agency's statutory construction of one of its operating statutes is legally permissible. Ms. Lee is a citizen of South Korea. She came to the United States as a twelve-year-old in 1999 with her parents on a B-2 nonimmigrant visitor visa. She subsequently applied for and received a change in visa status to the F-1 nonimmigrant student category, allowing her to attend a private school approved by the Attorney General of the United States.

The last approved private school Ms. Lee attended was Riverview Christian Academy in Colorado. After her sophomore year, when Ms. Lee was sixteen, the school ceased operations. The school's closure required Ms. Lee to seek an alternative for schooling. Riverview Christian Academy attempted to assist Ms. Lee in applying to another private school, but the other private schools were too far from her residence, and Ms. Lee understood it would be difficult for her to achieve admittance. Therefore, Ms. Lee attended a local public high school, graduating in May 2005.

In September of 2003, a few months after Ms. Lee's private school closed, she filed for a status adjustment, which was denied. The following year, on July 14, 2004, the Immigration and Naturalization Service issued a Notice to Appear charging Ms. Lee with being subject to removal because of her remaining in the United States longer than permitted and being in violation of her nonimmigrant status. Ms. Lee again asked for a status adjustment, but the government attorney

argued against the adjustment.  He explained Ms. Lee could not obtain a status adjustment[2] because she could not meet her burden of showing admissibility due to her no longer attending the private school for which she had been approved and attending a public school without reimbursing it for her education.

Even though the Immigration Judge stated that "[m]aybe [Ms. Lee] was not at fault for terminating her studies at the school, and I do think she ended her studies there because she had to," he ultimately refused to adjust Ms. Lee's status from nonimmigrant to permanent resident because he found Ms. Lee had not met her burden of proving she was admissible.  (R. at 35–36.)  His findings and legal conclusions included determining Ms. Lee was a student visa abuser under 8 U.S.C. § 1184(m)[3] for terminating her course of study at her private school and undertaking a course of study at a public school.  In a cursory decision, the Board of Immigration Appeals affirmed the IJ's findings on the merits, without reviewing an untimely brief filed by Ms. Lee's attorney on her behalf.

We review de novo questions of law raised upon petition for review, and

_____

[2]To obtain a status adjustment, Ms. Lee had to: (1) apply for an adjustment, (2) prove she was "eligible to receive an immigrant visa and [was] admissible to the United States for permanent residence," and (3) have "an immigrant visa immediately available to [her] at the time [her] application [was] filed."  8 U.S.C. § 1255(a).  The Government argued Ms. Lee failed under the second step of proving admissibility.

[3]Although 8 U.S.C. § 1182(a)(6)(G) refers to 8 U.S.C. § 1184(l) as the section under which an alien may violate her status, the parties agree there is a typographical error in the referring statute and that the correct section is § 1184(m).

we review the agency's findings of fact under the substantial evidence standard. *See Elzourr v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004); *Rubio-Rubio v. INS*, 23 F.3d 273, 276 (10th Cir. 1994); *see also* 8 U.S.C. § 1252 (a)(2)(D).

The crux of this appeal is a question of law: whether the IJ's statutory construction of 8 U.S.C. § 1184(m)(2) is correct in concluding Ms. Lee's actions constituted a termination of her course of study. Ms. Lee argues that the IJ's statutory construction of § 1184(m)(2) and the BIA's upholding of that construction are impermissible under the plain language of the statute.[4] We agree.

According to § 1255(a), an alien may receive an status adjustment from nonimmigrant to permanent resident if the alien meets the three requirements listed therein. To meet the second requirement, an alien must prove she is

---

[4]Section 8 U.S.C. § 1252(a)(2)(B)(I) precludes judicial review of agency decisions under § 1255(a), the section in which a nonimmigrant may obtain a status adjustment. *See* 8 U.S.C. § 1252(a)(2)(B)(I). However, 8 U.S.C. § 1252 (a)(2)(D) states:

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Even though the agency made a decision under § 1255(a), that decision is reviewable for a question of law. *See Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007). Petitioner presents a question of law: whether the IJ's statutory construction of § 1184(m)(2) is permissible. Therefore, this court has jurisdiction under § 1252 (a)(2)(D).

admissible. In Ms. Lee's case, the IJ found she had not met that burden because she was inadmissible under § 1182(a)(6)(G)[5] as a student visa abuser. The IJ determined Ms. Lee abused her student visa status because she violated a term or condition of her status under § 1184(m)(2) by terminating her attendance at Riverview Christian Academy, even though he acknowledged that termination may not have been her fault.

Section 1184(m)(2) provides:

> An alien who obtains the status of a nonimmigrant under clause (i) or (iii) of section 1101(a)(15)(F) of this title in order to pursue a course of study at a private elementary or secondary school or in a language training program that is not publicly funded shall be considered to have violated such status, and the alien's visa under section 1101(a)(15)(F) of this title shall be void, if the alien *terminates or abandons* such course of study at such a school and undertakes a course of study at a public elementary school, in a publicly funded adult education program, in a publicly funded adult education language training program, or at a public secondary school (unless the requirements of paragraph (1)(B) are met).

§ 1184(m)(2) (emphasis added). Thus, in order to violate her status, Ms. Lee had to "terminate or abandon" her studies at "such a school."

---

[5]This section provides:

> An alien who obtains the status of a nonimmigrant under section 1101(a)(15)(F)(i) of this title and who violates a term or condition of such status under section 1184(l) of this title is inadmissible until the alien has been outside the United States for a continuous period of 5 years after the date of the violation.

§ 1182(a)(6)(G).

"The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). We begin by analyzing the plain language employed by Congress, and we "must give words their ordinary or natural meaning." *Leocal v. Ashcroft*, 543 U.S. 1, 8–9 (2004) (internal quotation marks omitted); *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982). Importantly, "we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co.*, 456 U.S. at 68 (internal quotation marks omitted).

"When a court reviews an agency's construction of the statute which it administers," it must first answer "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If congressional intent is clear from the statutory language, the inquiry is over, and both the court and the agency "must give effect to the unambiguously expressed intent of Congress." *See id.* at 842–43. However,

> [i]n making the threshold determination under *Chevron*, "a reviewing court should not confine itself to examining a particular statutory provision in isolation." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000). Rather, "[t]he meaning – or ambiguity – of certain words or phrases may only become evident when placed in context . . . . It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Id.* at 132–33.

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2534

-6-

(2007) (second alteration in original) (explaining the Court would not construe the statute in that case to "implicitly abrogate or repeal" the operation of many mandatory agency directives and thereby create differing mandates).

We discuss first the school to which the statute refers. In the plain language of the statute, the antecedent of the term "such a school" is "a private . . . secondary school," § 1184(m)(2), specifically described in the reference statute, 8 U.S.C. § 1101(a)(15)(F), as "an established . . . academic high school . . . particularly designated by the immigrant and approved by the Attorney General after consultation with the Secretary of Education." The relevant regulation describing the duration of an alien's nonimmigrant status on an F-1 visa links the status duration specifically to "an educational institution approved by the Service for attendance by foreign students." 8 C.F.R. § 214.2(f)(5)(i); *see also United States v. Atandi*, 376 F.3d 1186, 1187 n.1 (10th Cir. 2004).

Because § 1184(m)(2) refers specifically to "such" a school rather than to "a" or "any" private school, and because its internal statutory references and the regulations regarding F-1 student visa duration point only to a school specifically selected by the immigrant and approved by the government, we hold that the school to which the statute refers in this case is Riverview Christian Academy, the school selected specifically by Ms. Lee and approved by the government. Having established that the school in question is Riverview Christian Academy, we now scrutinize whether Ms. Lee terminated or abandoned her course of study

at this school.

Beginning with the plain language of the statute, we note that "terminate" is defined as: "1. To put an end to; to bring to an end. 2. To end; to conclude." *Black's Law Dictionary* 1511 (8th ed. 2004). To abandon means:

> To desert, surrender, forsake, or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up or to cease to use. To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. It includes the intention, and also the external act by which it is carried into effect.

*Black's Law Dictionary* 2 (6th ed. 1990) (internal citations omitted) (providing the last included definition of the word "abandon," which was omitted in subsequent editions). Thus the ordinary meaning of both these words requires the alien to act, not to be acted upon.

Because we must first assume congressional intent is indicated by the ordinary meaning of the words used, we hold that Congress intended to penalize only an alien who acts affirmatively to terminate or to abandon such course of study at such a school. This statutory construction does not create a conflict with the root of the statutory scheme. It merely clarifies Congress's intent that an alien must affirmatively act to become a student visa abuser under § 1184(m)(2). That status may not be thrust upon her.

Because the reason Ms. Lee no longer attended Riverview Christian Academy was that it ceased operating, Ms. Lee took no affirmative action to

-8-

terminate or to abandon her course of study at the school.[6]  Instead, the school

acted, and Ms. Lee reacted.  It is obvious the IJ did not take into account the

affirmative action required of Ms. Lee by the statute when he found she "ended

her studies there *because she had to*, but that would be a termination of her

studies at that particular school."  (R. at 35–36 (emphasis added).)  In reviewing

the IJ's statutory interpretation, we hold that he erred in concluding Ms. Lee

terminated or abandoned her course of study at Riverview Christian Academy,

was therefore a student visa abuser, and thus could not meet her burden of

proving she was admissible for a status adjustment under § 1255(a).

Finally, Ms. Lee's termination or abandonment of her course of studies is

explicitly listed in the conjunctive with the second part of the statute proscribing

her attendance at a publicly funded school.  Therefore, because Ms. Lee did not

terminate or abandon her course of studies under the plain language of §

1184(m)(2), we need not reach the second prong of the statute to determine if her

attendance at a public high school placed her in violation of her student visa

status.

We **REVERSE** and **REMAND** this case for further proceedings consistent

---

[6]Even though the government argues that Ms. Lee's actions make her a
student visa abuser and that she falls within the scope of Congress's overall intent
to prevent aliens from educating themselves at the taxpayers' expense, we
conclude we cannot interpret the plain language in § 1184(m)(2) to mean that a
private school's closing constitutes an alien's affirmative action to terminate or to
abandon her course of study at that school.

with this opinion.

06-9594 - *Bo Hae Lee v. Mukasey*

**HARTZ**, Circuit Judge, dissenting:

I respectfully dissent. Although the majority's interpretation of the statutory language is a plausible one, I think that the government's interpretation is more reasonable. In any event, because the language is ambiguous, we should remand to the Board of Immigration Appeals (BIA) for an authoritative construction.

Under 8 U.S.C. § 1101(a)(15)(F)(i) an alien can qualify for nonimmigrant student status if she wishes to pursue a full course of study at an educational institution approved by the federal government and then return home. Such an alien is termed an F-1 student. Approval for the institution must be withdrawn if the institution does not promptly report "the termination of attendance of each nonimmigrant student." 8 U.S.C. § 1101(a)(15)(F)(i).

In addition to the requirements of § 1101(a)(15)(F)(i), further restrictions are imposed by 8 U.S.C. § 1184(m) with respect to those who wish to pursue studies at an elementary or secondary school or an adult education program. Under § 1184(m), nonimmigrant status is not available to pursue studies at a public elementary school or a publicly funded adult education program, and is available to pursue studies at a public secondary school only if the course of study is 12 months or less and the alien pays the cost of the education. *See* 8 U.S.C. § 1184(m)(1). Once an alien is admitted as an F-1 student under § 1101(a)(15)(F)(i), regulations of the Department of Homeland Security (DHS)

provide that the alien remains admitted so long as she "is pursuing a full course of study at an educational institution approved by the [government]," except that one admitted for attendance at a public high school is restricted to 12 months of study at such a school. 8 C.F.R. § 214.2(F)(5)(i). The DHS regulations permit a student to transfer between educational institutions if certain paperwork is executed, *see id*. § 214.2(f)(8); and the regulations accommodate medical conditions that require reduced or no study for less than 12 months, *see id*. § 214.2(f)(6)(iii)(B). A student may request reinstatement to nonimmigrant status if "[t]he violation of status resulted from circumstances beyond the student's control." *Id*. § 214.2(f)(16)(F)(*1*) "Such circumstances might include . . . closure of the institution, . . . ." *Id*.

An alien admitted to this country as an F-1 student may lose that status in a number of ways by violating the terms of the governing statutes and regulations. But one particular course of conduct is singled out as a violation by § 1184(m)(2), which states:

> An alien who obtains the status of a nonimmigrant under clause (i) or (iii) of section 1101(a)(15)(F) of this title in order to pursue a course of study at a private elementary or secondary school or in a language training program that is not publicly funded shall be considered to have violated such status, and the alien's visa under section 1101(a)(15)(F) of this title shall be void, if the alien terminates or abandons such course of study at such a school and undertakes a course of study at a public elementary school, in a publicly funded adult education program, in a publicly funded adult education language

training program, or at a public secondary school (unless the requirements of paragraph (1)(B) [which require paying the costs of the secondary-school education and limit the term of study to 12 months] are met).

U.S.C. § 1184(m)(2). Such a violation is more than just a failure to satisfy the conditions of F-1 status. To commit a violation under § 1184(m)(2), it is not enough simply to terminate a course of study at a private school and take a job or a vacation; the alien must, for example, also enroll in a public secondary school without paying the required cost. A violation under § 1184(m)(2) is so serious that its commission renders the alien inadmissible, as a student visa abuser, until the alien has been outside the United States for at least five years. *See* 8 U.S.C. § 1182(a)(6)(G).[1] This is a harsh sanction, and it is apparent that Congress reserved it for what it considered the worst type of abuse of F-1 status—coming to the United States to pursue a privately funded education but then taking advantage of the free public education provided by this country.

The issue before us is whether Ms. Lee has "violate[d] a term or condition of [F-1] status under [§ 1184(m)]." § 1182(a)(6)(G). As relevant to this case,

---

[1]Section 1182(a)(6)(G) states:
> An alien who obtains the status of a nonimmigrant under section 1101(a)(15)(F)(i) of this title and who violates a term or condition of such status under section 1184(*l*) of this title is admissible until the alien has been outside the United States for a continuous period of 5 years after the date of the violation.

(All agree that the reference to 8 U.S.C. § 1184(*l*) should be to § 1184(m), which was originally enacted as § 1184(*l*).)

there are three elements to such a violation. First, the alien must have obtained F-1 nonimmigrant status "in order to pursue a course of study at a private elementary or secondary school." § 1184(m)(2). Second, the alien must "terminate[] or abandon[] such course of study at such a school." *Id.* Third, the alien must not attend public secondary school, unless the alien pays the cost of the education and the term of study is no more than 12 months. *See id.* The first and third elements are not in dispute. The only question is whether Ms. Lee "terminate[d] or abandon[ed] such course of study at such a school." *Id.*

The majority opinion concludes that "such a school" must be the Riverview Christian Academy. I agree that this is a possible interpretation of the statutory language. Section 1184(m)(2) relates to "[a]n alien who obtains [F-1] status . . . in order to pursue a course of study at a private elementary or secondary school." One could infer that "such course of study at such a school" refers specifically to elementary (or secondary) education at the school identified by the alien when she obtained F-1 status. But if "such course of study at such a school" is a reference only to the alien's original course of study and school (because her F-1 status was obtained specifically to pursue that course of study at that school), one arrives at a strange result. As mentioned above, and as Congress surely anticipated, the governing regulations permit an alien to retain F-1 status by transferring from one private school to another. Yet apparently "abandoning" the *second* school would not be a violation of 1184(m), because only abandonment of the course of study at

-4-

the first school is covered by the provision; after all, the alien did not obtain her F-1 status on the basis that she wished to pursue studies at the second school.

In any event, even if the majority opinion's interpretation is reasonable, it is surely also reasonable to interpret "such a school" as the *type* of school described earlier in the sentence: namely, "a private elementary or secondary school or . . . a language training program that is not publicly funded." *Id*. The use of the word *such* makes it unnecessary to repeat this quoted language. A common definition of *such* is "having a quality already or just specified—used to avoid repetition of a descriptive term." Webster's Third New Int'l Dictionary 2283 (2002). Applying this definition, Ms. Lee violated § 1184(m). She decided that she would no longer pursue a course of study at a school of the type that she had been attending—a private secondary school. That decision was an *abandonment* of "such course of study at such a school." § 1184(m)(2).

This construction of the statutory language apparently comports with the practice of the immigration authorities, which seem to care about the type of institution attended by the F-1 student, rather than the specific school. The record in this case reflects that Ms. Lee was first notified that she had been granted F-1 status on April 14, 2000. At that time she was attending private school in Michigan. The notice of F-1 status contains no reference to the school she was attending. It says merely that the notice is "Valid for Duration of Status." R. at

108. No new notice of F-1 status was necessary when Ms. Lee transferred to Riverview.

This construction of the statutory language also is fully consistent with the apparent purpose of § 1184(m). The majority opinion emphasizes that Ms. Lee's departure from Riverview Christian Academy was hardly her fault—the school closed. But there was nothing involuntary about her failure to choose an alternative. If attending a private high school was too difficult at that time (because, for example, there was no similar school close to home), she could transfer to a public school (as she did) and pay the cost of her education (which she did not do). It seems to me quite possible that Congress would have considered the course taken by Ms. Lee (and her family) as sufficiently culpable to be worthy of the inadmissibility sanction of § 1182(a)(6)(G), even if it might have been still more culpable to quit an operational school and then attend a public high school without paying the cost of the education.

More importantly, though, it should not be our task in the first instance to resolve this ambiguity. That should be accomplished by either a DHS regulation or a decision by the Board of Immigration Appeals (BIA). The BIA has had no real opportunity to address the matter in this case. It decided the case based only on Ms. Lee's notice of appeal because her brief was untimely. The Attorney General has requested that if we find it necessary to construe § 1184(m), we should remand to the BIA on the issue. *See* Aplee. Br. at 16 n.6. I would honor

that request. We would then defer to the BIA's interpretation. *See Niang v.*

*Gonzales*, 422 F.3d 1187, 1199 (10th Cir. 2005).