**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANIEL KOFI AWUKU-ASARE, a/k/a
Daniel Kofi Awuku Asare, a\k\a Asare,

     Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,*

     Respondent.

No. 19-9516

_____

**Petition for Review of an Order from the**
**Board of Immigration Appeals**
_____

Edgar Chavarria, student attorney (Christopher N. Lasch and Tania N. Valdez on the briefs), Immigration Law & Policy Clinic at the University of Denver Sturm College of Law, Denver, Colorado, for Petitioner.

Christopher A. Bates, Senior Counsel to the Assistant Attorney General (Erik R. Quick, Trial Attorney, Joseph H. Hunt, Assistant Attorney General, Derek C. Julius, Assistant Director, on the brief), United States Department of Justice, Civil Division, Washington, D.C., for Respondent.
_____

Before **HOLMES**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

---

    * Pursuant to Fed. R. App. P. 43(c)(2), William Barr is replaced as the respondent in this case with Merrick B. Garland, United States Attorney General.

Daniel Awuku-Asare appeals the decision of the Board of Immigration Appeals (BIA) affirming his removal order. Awuku-Asare entered the country on a nonimmigrant F-1 visa and could lawfully remain in the United States so long as he complied with the conditions of his visa. Relevant here, maintaining an F-1 visa status requires maintaining a full course of study at an approved educational institution. But Awuku-Asare did not comply with this full-course-of-study requirement because he was incarcerated for approximately 13 months for a crime of which he was ultimately acquitted.

Raising an issue of first impression, Awuku-Asare argues that even though he did not comply with the conditions of his visa, he did not fail to maintain his status. Specifically, he argues that "the failure to maintain status must be attributable to the nonimmigrant to render him [removable]." Aplt. Supp. Br. 8. He further contends that because circumstances beyond his control—his incarceration—caused the lapse in his status, he is not removable.

Because we determine that the plain meaning of the relevant statute does not support this interpretation, we reject Awuku-Asare's arguments and affirm the BIA's decision.

## Background

Awuku-Asare, a native and citizen of Ghana, first entered the United States in 2012 on an F-1 student visa. He attended Saint Leo University in St. Leo, Florida. Later, Awuku-Asare sought out another educational opportunity at Rhema Bible Training College, which accepted him as a transfer student in August 2017. But two

weeks after his acceptance, Awuku-Asare was arrested and charged with first-degree rape. Although a jury later acquitted Awuku-Asare, he was incarcerated for about 13 months, from August 2017 to September 2018. As a result of his incarceration, Awuku-Asare was not enrolled in a full course of study.

Soon after his acquittal, Awuku-Asare received a Notice to Appear charging him as removable under 8 U.S.C. § 1227(a)(1)(C)(i) for failing to maintain his F-1 status. In a hearing before the immigration judge (IJ), Awuku-Asare acknowledged that he could not maintain his F-1 status while incarcerated because he was not engaged in a full course of study. Because Awuku-Asare did not maintain a full course of study, the IJ found Awuku-Asare ineligible for any form of relief and ordered him removed. The BIA sustained the removability charge for the same reason, determining that "[a]s a result of his arrest and detention," Awuku-Asare could not "pursue the requisite 'full course of study.'" App. 2 (quoting 8 C.F.R. § 214.2(f)(5)(i)). Awuku-Asare appeals.

**Analysis**

Awuku-Asare challenges his removal order on two fronts. He argues that the BIA improperly interpreted § 1227(a)(1)(C)(i), which makes noncitizens removable for "fail[ing] to maintain [their] nonimmigrant status." He also argues that if we agree with his interpretation of § 1227(a)(1)(C)(i), then we must further find that his removal order is not supported by substantial evidence.[1]

_____

[1] The government argues that Awuku-Asare failed to exhaust nearly every argument asserted in supplemental briefing filed by his appointed counsel. But in

3

When analyzing Awuku-Asare's arguments, we review "the BIA's legal determinations de novo[] and its findings of fact under a substantial-evidence standard." *Xue v. Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017) (quoting *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005)).

## I. Statutory Interpretation

Under the Immigration and Nationality Act of 1952, 8 U.S.C. §§ 1101–1537, the Department of Homeland Security can allow certain classes of nonimmigrant "foreign nationals [to] enter the country for fixed, temporary periods of time pursuant to a visa." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 336 (D.C. Cir. 2018). For instance, and as relevant here, the F-1 student visa—so named for the statutory subsection that authorizes such a visa—enables "bona fide student[s] . . . to enter the United States temporarily and solely for the purpose of pursuing . . . a [full] course of study" at an approved educational institution. 8 U.S.C. § 1101(a)(15)(F)(i); *see also Lee v. Mukasey*, 527 F.3d 1103, 1108 (10th Cir. 2008) (Hartz, J., dissenting).

---

considering this argument, we note that Awuku-Asare represented himself in the underlying proceedings and initially on appeal. Given that we must liberally construe pro se arguments, we conclude that Awuku-Asare sufficiently exhausted all but one of his supplemental arguments. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (explaining liberal standard for evaluating pro se filings). Specifically, Awuku-Asare failed to present to the BIA his statutory-interpretation argument stemming from the Eighth Amendment. We therefore decline to address that argument. *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (noting that noncitizen "must present the *same specific legal theory* to the BIA before he or she may advance it in court").

F-1 students are "admitted for duration of status," meaning that they are admitted for "the time during which [they are] pursuing a full course of study at an [approved] educational institution." 8 C.F.R. § 214.2(f)(5)(i). A "[f]ull course of study" must be directed toward "the attainment of a specific educational or professional objective," and it generally requires a certain number of credit hours or attendance hours.[2] § 214.2(f)(6).

If an F-1 student fails to maintain his or her status, he or she generally becomes removable.[3] *See* § 1227(a)(1)(C)(i). And that is what occurred here, according to the BIA: Awuku-Asare failed to maintain his F-1 student status because he was not pursuing a full course of study while incarcerated.

On appeal, Awuku-Asare does not dispute that he was not pursuing a full course of study while incarcerated; instead, he argues that the BIA erred in interpreting § 1227(a)(1)(C)(i) to apply in these circumstances. Section

---

[2] The regulations provide some exceptions to this full-course-of-study requirement. For instance, an F-1 student may maintain his or her status despite not pursuing a full course of study "during the annual (or summer) vacation," so long as "the student is eligible and intends to register for the next term." § 214.2(f)(5)(iii). Additionally, an F-1 student may maintain status when not pursuing a full course of study if he or she is "engaging in authorized practical training following completion of studies"; moving "from one educational level to another" in an approved manner; or preparing to depart from the country. § 214.2(f)(5)(i), (ii), (iv). But Awuku-Asare does not argue that these provisions—or any other exceptions to the full-course-of-study requirement—apply here.

[3] The regulations include a procedure by which F-1 students can attempt to reinstate a lapsed status, which involves filing two forms, meeting certain requirements, and asking the district director to exercise his or her discretion to grant the reinstatement request. *See* § 214.2(f)(16)(i). The government states that Awuku-Asare never attempted this process, and Awuku-Asare does not suggest otherwise.

5

1227(a)(1)(C)(i) states that "[a]ny [noncitizen] who was admitted as a nonimmigrant and *who has failed to maintain* the nonimmigrant status in which the [noncitizen] was admitted . . . or to comply with the conditions of any such status, is [removable]." (Emphasis added.) Focusing on the emphasized language, Awuku-Asare asserts that under this statute, a nonimmigrant is only removable if "the failure to maintain status [is] attributable to the nonimmigrant." Aplt. Supp. Br. 8. Therefore, he reasons, he is not removable because the failure to maintain his F-1 status is attributable to his incarceration for a crime of which he was ultimately acquitted rather than to him.

In support of this argument, Awuku-Asare appropriately begins with the plain language of the statute. *See Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1218–19 (10th Cir. 2018) ("Statutory interpretation begins with the words in the statute."). In particular, he argues that because the statute uses the active voice in requiring that the nonimmigrant must have "failed" to maintain the conditions of his status, the "plain language of the statute provides that the [noncitizen] . . . must be the one who fails." Aplt. Supp. Br. 15. Awuku-Asare then concludes that because the statute uses the active voice, it requires the "'failure' that results in termination of status [to] be *attributable to and performed by* the noncitizen in order to trigger deportation." Aplt. Supp. Br. 16 (emphasis added). In other words, he contends that the failure must be the nonimmigrant's fault or that the nonimmigrant must at least perform some affirmative act to cause such failure.

Awuku-Asare's first point is not disputed. The statute utilizes the active voice: the subject of the sentence is the noncitizen, and it is the noncitizen who must have

6

failed to maintain his or her status. But Awuku-Asare extends this analysis too far when he suggests the use of the active voice necessarily means that the nonimmigrant's failure to maintain status must have been caused by some affirmative act performed by the nonimmigrant or that the failure to maintain status was otherwise the nonimmigrant's fault. Neither the statute nor the use of the active voice mandates this latter conclusion.

Awuku-Asare's focus on the active voice overlooks the ordinary meaning of the word "fail." S*ee Lee*, 527 F.3d at 1106 ("[W]e 'must give words their ordinary or natural meaning.'" (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 8–9 (2004))). Merriam-Webster defines "fail" as "to fall short," "to be unsuccessful," or "to leave undone." *Fail*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/failed (last visited Feb. 22, 2021). A learners' dictionary also published by Merriam-Webster further explains that "fail," when "followed by *to + verb*," means "to not succeed," "to end without success," "to not do (something that you should do or are expected to do)," or simply "to not do something." *Fail*, LearnersDictionary.com, https://learnersdictionary.com/definition/fail (last visited Feb. 22, 2021). Thus, § 1227(a)(1)(C)(i) unambiguously provides that a noncitizen "who has failed to maintain" nonimmigrant status has simply been unsuccessful at, or has not completed, the anticipated action: maintaining nonimmigrant status. Accordingly, Awuku-Asare's proposed interpretation—that the noncitizen's failure must be attributable to or be the fault of the noncitizen—necessarily adds text to an unambiguous statute. And that is something we cannot do. *See Exby-Stolley v. Bd. of*

7

*Cty. Comm'rs*, 979 F.3d 784, 810 (10th Cir. 2020) (en banc) (noting that when interpreting a statute, it "is generally impermissible" to "effectively add[] words to the statute").

Nevertheless, Awuku-Asare argues that his reading of the statute is consistent with this court's interpretation of a similar statute in *Lee*, 527 F.3d 1103. There, we interpreted 8 U.S.C. § 1184(m)(2), which concerns visas for study at private secondary schools and provides in relevant part that students who "terminate[] or abandon[] such course of study at such a school" and enroll in a public school violate their nonimmigrant status. The student in *Lee* initially attended a private secondary school, in compliance with her visa. *Id.* at 1104. But when her private school abruptly closed, she began attending the local public school. *Id*. We therefore considered whether the student terminated or abandoned her studies under § 1184(m)(2). *Id.* at 1106. In doing so, we first interpreted the statutory phrase "such a school" as referring to the private school selected specifically by the student—meaning, in that case, the school that closed. *See id.* at 1106–07. We then examined the ordinary meaning of the words "terminate" and "abandon" and ultimately concluded that these words "require[] the [nonimmigrant] to act, not to be acted upon." *Id.* at 1107. This ordinary meaning signaled Congress's intent "to penalize only a[] [nonimmigrant] who acts affirmatively to terminate or to abandon such course of study at such a school." *Id.* And because the school ceased to operate, Lee did not "terminate" or "abandon" her studies at the school. She merely reacted to the school's action. Thus, she did not violate the conditions of her visa. *Id.*

Awuku-Asare points out that the statutory language at issue in *Lee* also uses the active voice, and he argues that *Lee* permits us to imply a similar fault-based or action-based requirement here. In response, the government does little to distinguish *Lee*, arguing only that *Lee* is irrelevant because it concerns different facts and a different statute. Yet *Lee* does not support Awuku-Asare's argument for a more fundamental reason. Specifically, this court in *Lee* never mentioned—and therefore did not predicate its analysis on—the statute's use of the active voice. Rather, *Lee* focused more precisely on the ordinary meaning of the words "terminate" and "abandon," and, in particular, the relation of those verbs to their subject, the student's "course of study at such a school." *Id.* at 1107. *Lee* therefore does not stand for the proposition that a statute's use of the active voice, by itself, empowers us to imply an exception to an otherwise unambiguous statute. As such, our interpretation of § 1184(m)(2) in *Lee* does not alter our conclusion that § 1227(a)(1)(C)(i) does not require the noncitizen's failure to maintain his status to be caused by an affirmative act of the noncitizen or otherwise be the fault of the noncitizen.

Awuku-Asare further suggests that another statutory provision related to removals supports his interpretation of § 1227(a)(1)(C)(i). We generally do not consult extratextual sources unless a statute is ambiguous. *See, e.g.*, *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2469 (2020) ("There is no need to consult extratextual sources when the meaning of a statute's terms is clear. Nor may extratextual sources overcome those terms. The only role such materials can properly play is to help 'clear up . . . not create' ambiguity about a statute's original meaning." (quoting

9

*Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011))). But even if we were to consider this statute, it cuts against Awuku-Asare's argument.

Awuku-Asare relies on the section concerning in absentia removals, which provides that such removals are not proper where the noncitizen was in custody at the time of his or her removal hearing and the "failure to appear was through no fault of" the noncitizen. 8 U.S.C. § 1229a(b)(5)(C)(ii). Awuku-Asare asserts that this provision is a specific example of a broader statutory purpose to consider circumstances outside the noncitizen's control. Therefore, he reasons, we should interpret § 1227(a)(1)(C)(i) to mean that student visa holders are not removable unless they take some affirmative action to violate their status.

But as the government points out, the in absentia provision does not support Awuku-Asare's interpretation because, unlike § 1227(a)(1)(C)(i), it contains an explicit exception for circumstances outside a noncitizen's control. This distinction is critical. That Congress created an explicit exception in the in absentia provision strongly suggests that it could have created an exception to § 1227(a)(1)(C)(i) but chose not to.[4] *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–72 (1979)

---

[4] As the BIA explained in *In re Evra*, "[t]he clear purpose of the [statutory exception for in absentia removals] is to prevent individuals in such custody from being ordered removed in absentia when they are unable to attend their hearing as a result of incarceration," regardless of whether the noncitizen is guilty of the crime precipitating incarceration. 25 I. & N. Dec. 79, 80–81 (B.I.A. 2009). Under this reading, the language of the in absentia provision suggests both that Congress knew how to create an explicit exception based on circumstances outside of the noncitizen's control and that the circumstance it was concerned about in this context was a noncitizen's inability to attend a hearing due to being in custody, rather than his or her responsibility for being in custody.

(concluding that Congress did not intend to create private right of action with one section of statute in part because Congress explicitly created private right of action with surrounding sections); *Copeland ex rel. Copeland v. Toyota Motor Sales U.S.A., Inc.*, 136 F.3d 1249, 1257 (10th Cir. 1998) ("[W]e are reluctant to impose additional, implied limitations . . . based on general equitable principles unexpressed in the statute."). Overall, because the in absentia provision contains language implementing the same type of exception Awuku-Asare asks us to create, it cuts against his interpretation of § 1227(a)(1)(C)(i).[5]

In summary, § 1227(a)(1)(C)(i) unambiguously provides that a student visa holder who fails to comply with the conditions of his or her visa—one of which is to pursue a full course of study—is removable.[6] The statute contains no requirement

---

[5] Awuku-Asare also cites to a portion of the reinstatement regulation providing that a nonimmigrant student who fails to maintain the conditions of his or her status is eligible for reinstatement if "[t]he violation of status resulted from circumstances beyond the student's control." § 214.2(f)(16)(i)(F)(1). Again, even if we could consider regulatory language after finding a statute unambiguous, this regulation does not support Awuku-Asare's position for the same reason that the in absentia statute does not—it contains explicit language providing the kind of exception that Awuku-Asare seeks to graft onto the plain language of § 1227(a)(1)(C)(i).

[6] Because we find the statute unambiguous, we do not reach Awuku-Asare's argument that his proposed interpretation of § 1227(c)(1)(A)(i) provides a more robust safeguard for the constitutional interests of F-1 students. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) (explaining that "*when statutory language is susceptible of multiple interpretations*, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems" (emphasis added)); *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494 (2001) ("[T]he canon of constitutional avoidance has no application in the absence of statutory ambiguity.").

that such failure be the fault of the visa holder or the result of some affirmative action taken by the visa holder.[7]

## II. Substantial Evidence

Last, Awuku-Asare argues that his removal order is not supported by substantial evidence because neither the IJ nor the BIA considered whether he was at fault for his violation. *See Niang*, 422 F.3d at 1196 (explaining that BIA decisions must be supported by "reasonable, substantial[,] and probative evidence" (quoting *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004))). This argument is an extension of his statutory-interpretation theory. It is undisputed that Awuku-Asare did not maintain a full course of study during his 13-month incarceration and that, as a result, he was not compliant with the conditions of his status. But Awuku-Asare argues that if this court accepts his fault-based interpretation, then it must conclude that there is no substantial evidence demonstrating that he is at fault for his violation. Thus, Awuku-Asare's substantial-evidence argument rises and falls with his statutory-interpretation argument. Because we reject Awuku-Asare's fault-based statutory interpretation, we likewise reject his substantial-evidence argument.

---

[7] The government alternatively argues that the factual record supports Awuku-Asare's removability regardless of his proposed statutory interpretation. But at oral argument, counsel for the government acknowledged that the statutory-interpretation issue is dispositive. Because our resolution of Awuku-Asare's interpretive arguments resolves this appeal, we limit our analysis accordingly.

**Conclusion**

We conclude that the plain meaning of § 1227(a)(1)(C)(i) does not require the failure to maintain nonimmigrant status to be the fault of the nonimmigrant or the result of some affirmative action taken by the nonimmigrant. We therefore deny Awuku-Asare's petition and affirm the BIA. Further, we grant Awuku-Asare's motion to proceed in forma pauperis, and we deny his motion for leave to file a supplemental appendix as moot.